Robert J. GARZA, Appellant,

v.

CITY OF MISSION; City Council of the City of Mission; Fernando Ortegon, Individually and in his official capacity as Mayor, Leonel Olizarez, Individually and in his official capacity as Council Member, Manuel Delgado, Individually and in his official capacity as Council Member, Leonel Pena, Individually and in his official capacity as Council Member, Manuel De Leon, Individually and in his official capacity as Council Member, and Benito Lopez, Individually and in his official capacity as City Manager, Appellees.

No. 13–84–303–CV.

Court of Appeals of Texas, Corpus Christi.

Nov. 29, 1984.

Rehearing Denied Jan. 3, 1985.

George M. Kirk, Jr., Houston, Roberto Garcia, Garcia, Lopez & Rodriguez, Edinburg, for appellant.

Larry Watts, Houston, Hollis Rankin, Jr., McAllen, for appellees.

Before UTTER, KENNEDY and KEITH, JJ.

OPINION

UTTER, Justice.

This is an accelerated appeal pursuant to TEX.CIV. 385 from an order denying appellant's application for temporary injunction. This appeal from an interlocutory order is expressly authorized by TEX.REV.CIV. STAT.ANN. art 4662 (Vernon Supp.1984). We affirm the judgment of the trial court.

On June 5, 1984, appellant, former Chief of Police of the City of Mission, initially filed suit against appellees, who allegedly had violated appellant's rights under TEX. REV.CIV.STAT.ANN. art 6252–16a (Vernon Supp.1984). Article 6252–16a, an act relating to the protection of public employees who report a violation of law, provides:

Retaliation prohibited

Sec. 2. A state or local governmental body may not suspend or terminate the employment of, or otherwise discriminate against, a public employee who reports a violation of law to an appropriate law enforcement authority if the employee report is made in good faith.

In his petition, appellant alleged that his employment as Chief of Police of the City of Mission had been terminated by appellees in retaliation for appellant having initiated and conducted, in the good faith exercise of his lawful duties as Chief of Police, an internal investigation regarding allegations of criminal wrongdoing by a police officer employed by the City of Mission. Appellant further alleged (1) that he referred the results of the internal investigation to the District Attorney of Hidalgo County for possible criminal indictment by the Grand Jury of Hidalgo County and (2) that appellees had knowledge of the investigation.

Also, on June 5, 1984, appellant filed Plaintiff's Application For Preliminary Injunction, alleging (1) that appellees had ter-minated appellant's employment as Chief of Police in violation of Article 6252–16a, "which statute provides specially for injunctive relief in a controversy as is presented in the case at bar," and (2) that appellant "had no adequate remedy at law and irreparable damage to the Plaintiff will occur if he is not reinstated to his position pending resolution of this case." In said application, appellant prayed "specially for reinstatement to his position as Chief of Police of the City of Mission." Following an extensive hearing, the trial court denied appellant's application for temporary injunction. No findings of fact or conclusions of law were requested or filed.

Appellant had been the Chief of Police for the City of Mission from 1978 until March 29, 1984, when his employment with the City of Mission was terminated by Benito Lopez, who was then the acting City Manager. Prior to his termination, appellant became aware of alleged felonious wrongdoings of Officer George Rangel and, subsequently, in December or January, 1984, assigned Detective John Mohring to investigate the allegations. In September 1983, prior to the assignment of Mohring, appellant had visited the then acting City Manager, Jose Rolando Gonzalez, regarding other alleged wrongdoings (including certain internal affairs violations) by Rangel. After his assignment, Mohring accumulated evidence against Rangel and, sometime in February, 1984, presented his case against Rangel to Mark Alexander, Assistant District Attorney for Hidalgo County.

On March 21, 1984, Alexander issued a subpoena requiring Lopez, the acting City Manager who succeeded Gonzalez on February 16, 1984, to produce certain personnel and payroll records on Rangel. Mohring and Sergeant L.B. Garza served the subpoena on Lopez that same day. The records were delivered to the District Attorney's office approximately one week later.

On March 26, 1984, an executive session meeting of the City Council was held, at which time the status of the Police Depart-

ment was discussed. At that meeting, the City Council decided (1) that an impartial agency would be requested to conduct an "investigation" of the Police Department's operations and (2) that no action regarding appellant's employment would be taken until after the investigation. The next day after the meeting, City Manager Lopez requested the services of the Texas Commission on Law Enforcement Standards and Education ("TCLEOSE") to conduct such an investigation of the Police Department; however, TCLEOSE informed Lopez that such a request would have to be made by appellant, the acting Chief of Police, and that, following such a request, the agency would not be able to conduct such an investigation for approximately eight to ten months.

On March 28, 1984, Lopez received a petition signed by twelve officers, including Rangel, Flores and Benavides, threatening to resign on March 30, 1984, unless affirmative action was taken towards dismissing or reassigning appellant. Later that evening at City Secretary Criselda Briones' home, Briones and Dr. Fernando Ortegon, the Mayor of the City of Mission, discussed the threatened resignations. From Briones' home, Mayor Ortegon telephoned Flores, who, accompanied by Benavides, went to Briones' home to discuss the threatened resignations. At the end of his "visit" to Briones' home, Mayor Ortegon telephoned Lopez, the acting City Manager, concerning the threatened resignations. During their phone conversation, Lopez advised Mayor Ortegon that he was considering terminating appellant, and Mayor Ortegon expressed his agreement with Lopez. Later that evening about 9:30 p.m., City Manager Lopez called appellant to inform him to be in Lopez's office on the following morning because Lopez "had some matters" to discuss with appellant.

At approximately 10:00 a.m. on the morning of March 29, 1984, after Lopez had consulted with his attorneys and after appellant and his attorney had arrived at Lopez's office, Lopez terminated appellant's employment as Police Chief of the City of Mission because appellant had given the City of Mission a "lot of bad publicity."

In his first point of error, appellant alleges that the trial court erred in denying appellant the benefit of the statutory rebuttable presumption set forth in Article 6252–16a § 3(b). Section 3(b) provides:

(b) a public employee who sues under this section has the burden of proof, but it is a rebuttable presumption that the employee was suspended or terminated for reporting a violation of law if the employee is suspended or terminated not later than the 90th day after making a report in good faith.

Appellant urges that the effect of the above statutory rebuttable presumption, which he allegedly established by prima facie evidence, is similar to the "almost conclusive" effect of child legitimacy and ceremonial marriage validity presumptions and that, accordingly, appellees had to "go forward with certain definite, reliable and convincing evidence" in order to satisfy their burden of persuasion in rebutting such presumption. Appellant alleges that, under his theory of the "almost conclusive" effect of such presumption, appellees' evidence was not sufficient to discharge such burden of persuasion.

■ We disagree with appellant as to the legal effect of the statutory rebuttable presumption. We do not believe that this statutory presumption is entitled to the "almost conclusive" effect as that granted in child legitimacy and ceremonial marriage situations. We believe that strong social policy considerations, such as are present in those situations, are not present in this case; therefore, an "almost conclusive" effect, requiring appellees to "go forward with certain definite, reliable and convincing evidence" in order to rebut the statutory presumption, should not be applied here. We hold that the rebuttable presumption set forth in Article 6252–16a § 3(b), if established by prima facie evidence, is an "ordinary" rebuttable presumption, which does not shift the burden of proof. It is the type of rebuttable presumption which can stand only in the absence of evidence

to the contrary. *See Texas Water Rights Commission v. Wright,* 464 S.W.2d 642 (Tex.1971). Once sufficient evidence is produced to support a finding of the non-existence of the presumed fact, the case will then proceed as if no presumption ever existed. *See Allred v. Harris County Child Welfare Unit,* 615 S.W.2d 803 (Tex. Civ.App.—Houston [1st Dist.], 1980, writ ref'd n.r.e.). An "ordinary" rebuttable presumption does not have the effect of shifting the burden of proof; and, when rebuttable evidence is introduced, the presumption vanishes; the facts that give rise to the presumption remain for the jury's consideration even though the presumption has vanished. *See Pete v. Stevens,* 582 S.W.2d 892 (Tex.Civ.App.—San Antonio, 1979, writ ref'd n.r.e.). As set forth below, appellee introduced sufficient evidence to rebut such presumption. Appellant's first point of error is overruled.

In his second point of error, appellant alleges that the trial court abused its discretion in denying appellant's application for temporary injunction. At the hearing, appellant testified (1) that he, as Chief of Police, initiated and conducted the investigation in good faith, (2) that he had regular conversations with the Assistant District Attorney assigned to that case after the investigation was initiated and before his termination, (3) that he had informed the City Manager regarding the investigation and the basic circumstances of the allegations against Rangel and (4) that he thinks he was fired because he ordered the investigation and reported two felony complaints against Rangel.

Detective Mohring testified (1) that, after his assignment to the investigation of the allegations against Rangel, he contacted Alexander and supplied Alexander with documentation regarding the allegations against Rangel, (2) that, approximately six weeks before appellant was fired, he hand-carried to City Manager Gonzalez' office a letter from appellant, who told Mohring that the letter concerned problems with Rangel and requested that Rangel be terminated, and (3) that he believed Rangel was being protected by the city administration.

Mark Alexander, the Assistant District Attorney assigned to the case involving the allegations of felony wrongdoings by Rangel, testified (1) that, after being approached by Mohring in February, 1984, Mohring presented the case to him and (2) that the only information given by appellant was after appellant's termination.

City Manager Lopez testified (1) that, regarding the subpoena which he received, he had "no knowledge"—"absolutely no idea what the nature of the request was, absolutely none" and that he found out that Rangel was being investigated for something or other, at the time he was served with the subpoena, (2) that, during the Spring of 1984, he did not know of any investigation that was conducted regarding allegations of criminal wrongdoing by Rangel, (3) that appellant was not terminated as Chief of Police because he submitted any reports to the District Attorney's office "on any subject, George Rangel, or anything else," (4) that it was the threat of the resignations of the twelve officers that forced him to fire appellant because the threatened resignations "presented a genuine crisis, or potential crisis, for the citizens of the City of Mission," he "did not feel like gambling with the public safety" and he "thought termination was the thing to do at the time" and (5) that he did not receive any order or instruction to terminate appellant's employment.

Lieutenant Flores, who succeeded appellant as Chief of Police for a brief time, testified (1) that he had nothing to do with the decision to fire appellant, (2) that, prior to appellant's termination, there had been rumors that an officer was being investigated and that the case might be going before the Grand Jury, (3) that, at City Secretary Briones' home on the evening of March 28, 1984, Briones and Ortegon were present and that, even though they discussed the reasons for the petition, they did not discuss any strategy for firing appellant and (4) that he, as acting Chief of

Police, suspended Mohring for disregarding a direct order.

Police Lieutenant Connie Garza, the supervisor of Detective Mohring during the time of the investigation, testified (1) that, to her knowledge, no complaint had been filed charging a felony against Rangel, although Mohring had told her that he was investigating felony allegations against Rangel and (2) that she did not know that appellant had submitted any report to the District Attorney's office alleging any criminal wrongdoing of Rangel.

Briones, the City Secretary, testified (1) that, at her home on the evening of March 28, 1984, during their discussions, she and Mayor Ortegon neither mentioned appellant's name nor discussed the suggestion that appellant be fired or anything about a report or investigation by Mohring of Rangel, (2) that she was not aware of (a) any felony allegations against any officer, (b) any investigation against Rangel by Mohring or (c) any reports filed by appellant or Mohring in the District Attorney's office and (3) that she was not aware of any specific reason why appellant was fired.

Gonzalez, the former City Manager, testified (1) that appellant had not told him that Rangel was suspected or accused of having committed a felony and (2) that appellant was never the target of any member of the City Council or Mayor for retaliatory termination.

Mayor Ortegon testified (1) that, he considered the threatened resignations as "some sort of emergency for the City" "that could present a problem," (2) that, from the Briones' home on March 28, 1984, he called the two officers (Flores and Benavides) to ask how serious the situation was, (3) that he later telephoned Lopez to express his concern about the threatened resignations and told Lopez that "the threat of resignation was real, and it was an emergency" but did not tell Lopez to fire appellant, (4) that he had never instructed, directed, ordered or suggested that appellant be terminated as Chief of Police because he had submitted a report of alleged criminal wrongdoing to any appropriate law enforcement agency, (5) that he had never acted to protect Rangel from having appellant discipline him and (6) that, regarding appellant's employment, he had nothing to do with hiring and firing; notifying the City Manager that the threatened resignations was a serious situation was as far as he could go."

The only other witness, who testified at the hearing, was Police Sergeant Roberto Rivera, who was the acting Chief of Police at the time of the hearing and whose testimony was cumulative.

In his second point of error, appellant claims that, based upon the evidence presented at the hearing, the trial court abused its discretion by denying appellant's application for temporary injunction.

At a hearing upon a request for a temporary injunction, the only question before the trial court is whether the applicant is entitled to preservation of the status quo of the subject matter of the suit pending trial on the merits. *Davis v. Huey,* 571 S.W.2d 859 (Tex.1978); *Ogden v. Coleman,* 660 S.W.2d 578 (Tex.App.—Corpus Christi 1983, no writ). To prevail on an application for temporary injunction, an applicant need only plead a cause of action and show a probable right on final trial to the relief he seeks and probable injury in the interim. *Sun Oil Company v. Whitaker,* 424 S.W.2d 216 (Tex.1968); *Ogden v. Coleman,* 660 S.W.2d at p. 582; *Diesel Injection Sales and Service v. Gonzalez,* 631 S.W.2d 193 (Tex.App.—Corpus Christi 1982, no writ).

In reviewing an order granting or denying a temporary injunction, appellate review is strictly limited to a determination of whether there has been a clear abuse of discretion by the trial court in granting or denying the interlocutory order. *Davis v. Huey,* 571 S.W.2d at p. 862; *Ogden v. Coleman,* 660 S.W.2d at p. 581; *Diesel Injection Sales and Service v. Gonzalez,* 631 S.W.2d at p. 194; *Powers v. Lynn,* 523 S.W.2d 271 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.). Appellate courts will not assume that the evidence heard at

a preliminary hearing will be the same as the evidence developed at a full trial on the merits, thereby precluding an effective premature review of the merits and an effective denial of the applicant's right to a trial by jury. *Davis v. Huey,* 571 S.W.2d at p. 862. In determining whether the trial court abused its discretion in granting or denying a temporary injunction, an appellate court may not substitute its judgment for that of the trial court. *Id.,* at p. 862. In determining whether there has been an abuse of discretion, an appellate court is required to view the evidence in the light most favorable to the action of the trial court and indulge all reasonable presumptions in support of the trial court's judgment. *Parks v. U.S. Home Corporation,* 652 S.W.2d 479 (Tex.App.—Houston [1st District] 1983, writ dismissed); *Ogden v. Coleman,* 660 S.W.2d at pp. 581–582; *Diesel Injection Sales and Service v. Gonzalez,* 631 S.W.2d at p. 195; *Hartwell's Office World, Inc. v. Systex Corporation,* 598 S.W.2d 636 (Tex.Civ.App.—Houston [14th District] 1980, writ ref'd n.r.e.).

A trial court is clothed with broad discretion in determining whether to grant or deny an application for temporary injunction to preserve the rights of the parties pending a final trial of the case on its merits. When that discretion is exercised, it should not be overturned on appeal unless the record discloses a clear abuse of discretion. *Ogden v. Coleman,* 660 S.W.2d at p. 582; *Home Savings Association v. Ramirez,* 600 S.W.2d 911 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). An abuse of discretion does not exist when the trial court bases its decision on conflicting evidence. *Davis v. Huey,* 571 S.W.2d at p. 862; *Zmotony v. Phillips,* 529 S.W.2d 760 (Tex.1975); *Powers v. Lynn,* 523 S.W.2d at p. 274. Furthermore, where no findings of facts or conclusions of law are requested or filed, the trial court's judgment must be upheld on any legal theory supported by the record. *Davis v. Huey,* 571 S.W.2d at p. 862; *Seaman v. Seaman,* 425 S.W.2d 339 (Tex.1968).

After reviewing the entire record and in light of the conflicting evidence and the lack of findings of fact and conclusions of law, we find that the trial court did not abuse its discretion in denying appellant's Application for Temporary Injunction.

Additionally, the trial court did not err in denying the appellant's application for temporary injunction because a temporary injunction would have, in effect, given appellant a substantial portion of the ultimate relief, which he sought. Ordinarily, a trial court should not issue a temporary injunction if the applicant would thereby obtain substantially all the relief which is properly obtainable in a final hearing. *See Dallas Independent School District v. Daniel,* 323 S.W.2d 639 (Tex.Civ.App.—Dallas 1959, writ ref'd n.r.e.). "It is error for a trial court to grant a temporary injunction, the effect of which would be to accomplish the object of the suit. To do so would be to determine rights without a trial." *Id.,* at p. 641, quoting *Texas Foundries, Inc. v. International Moulders & Foundry Workers' Union,* 151 Tex. 239, 248 S.W.2d 460 (Tex.1952). Appellant's second point of error is overruled.

The judgment of the trial court is affirmed.