TRAVIS COUNTY, Texas, Appellant,

v.

Rosemary COLUNGA, Appellee.

No. 3-87-231-CV.

Court of Appeals of Texas,
Austin.

May 11, 1988.
On Rehearing June 29, 1988.

Ken Oden, Co. Atty., Sam Lively, Asst. Co. Atty., Austin, for appellant.

Jerri Lynn Ward, Mullen, MacInnes, Redding & Grove, Austin, for appellee.

Before POWERS, CARROLL and ABOUSSIE, JJ.

POWERS, Justice.

Travis County appeals from a judgment of the district court awarding Rosemary Colunga money damages, based on the jury's verdict, in her statutory cause of action brought under Tex.Rev.Civ.Stat. Ann. art. 6252-16a (Supp.1988), the "whistle-blower statute." We will affirm the judgment.

## THE CONTROVERSY

We shall summarize the controversy as shown by evidence that supports the verdict and judgment.

Travis County employed Rosemary Colunga as a parks worker at Precinct 4 Park, known as "Richard Moya Park." While working at the park, Colunga saw that county employees were not taking proper safety precautions in their use and storage of pesticides and herbicides: they did not wear protective gear when applying the poisons (the County did not furnish such gear to its employees); the employees were not instructed in proper safety procedures; the park was not closed to the public during application of the poisons, or for a reasonable time thereafter; the poisons were stored in unlocked shelters some 50 feet from a children's play area; and the poison containers were not safely discarded.

Colunga reported her observations and fears to those having authority over her, first to her immediate superior, then to the "line supervisor," the "precinct manager," and finally a "road and bridge supervisor," buttressing her complaints with published materials concerning the proper application, storage, and disposal of such poisons and containers. She did not procure any change in the practices. During the course of her complaints, she was demoted, transferred from Precinct 4 and back again, required to dig trenches with only a pick and without a shovel even though one was available, and prohibited from eating lunch in the county office with other employees. Undeterred, Colunga requested a meeting with Moya, the County Commissioner for Precinct 4, concerning the safety violations previously described. Moya agreed to meet in his office on a particular day.

Colunga asked John Douglas, a staff member of her union, to attend the meeting with her. On the appointed day, Douglas appeared at Moya's office before Colunga. Douglas and Moya began to argue over Colunga's allegations. Colunga arrived as the two men were parting, Moya following Douglas and taunting him with the statement "Sue me, big boy." Moya denied making this statement, although he admitted exchanging obscenities with Douglas and threatening to have the Sheriff remove Douglas if he did not leave and take Colunga with him. The meeting thus aborted

and the County discharged Colunga the same day. That evening, Colunga contacted the Texas Department of Agriculture and complained about the County's application, storage, and disposal of the poisons and containers. The Department inspected the park the next day, verified that the County's mishandling of the poisons constituted various violations of the law, and ordered the County to correct such practices.

Some four months after her discharge and almost immediately after she filed the present lawsuit, the County reinstated Colunga. She was, however, assigned to a precinct park some 50 miles from her home where, for justifiable reasons, she feared for her safety. At her request and based on health reasons, the County transferred her to a work site closer to her home. Before trial, she received several anonymous telephone calls threatening retaliation if she did not abandon her suit against the County. Afterwards, on two separate occasions when she was driving her automobile, she was forced from the roadway by trucks she could not identify. On other occasions, the anonymous callers threatened injury to her dogs. These threats were apparently carried out when one of her dogs was shot to death and the other mauled.

On the basis of such evidence, the jury found the elements necessary for Colunga to recover on the statutory cause of action authorized public employees in article 6252–16a. Specifically, the jury found Colunga in good faith reported a violation of law to Moya, the County terminated her employment for that reason, and the County acted with malice. The jury assessed Colunga's actual damages at $20,000 and awarded exemplary damages of $30,000. The trial court gave her judgment for those sums, together with interest and $11,368.75 in attorney's fees, from which judgment the County appeals.

## THE COUNTY'S POINT OF ERROR

The County does not challenge the validity of the jury's determinations that the

County maliciously terminated Colunga's employment because she in good faith reported violations of the law to Moya. Instead, the County contends in a single point of error that Colunga was not entitled to judgment, as a matter of law, because:

> The trial court erred in ruling that a county commissioner [Moya] was *the* "appropriate law enforcement authority" for the purposes of ... art. 6252–16a.

(emphasis added). In its argument, the County substitutes the *definite* article "the" for the *indefinite* article "an" that is actually employed in article 6252–16a § 2: "*an* appropriate law enforcement authority." (emphasis added).

The substitution of "the" for "an" assumes as a premise the validity of one of the two arguments advanced by the County under its point of error: that there can be only a *single* "appropriate" authority having the power of enforcement, for the purposes of art. 6252–16a. Thus, the County "contends that the appropriate authority for alleged pesticide misuse was the Texas Department of Agriculture" because that Department is by statute given comprehensive control over pesticide and herbicide use (including the powers of licensing, registration, rulemaking, and investigation) and an express statutory directive to "enforce" the statutes it administers in the matter of herbicides and pesticides, as well as any rules adopted by the Department thereunder. *See* Tex.Agri.Code Ann. §§ 75.001–76.203 (1982 & Supp.1988). If the theory is sound, it follows of course that neither Moya nor the County could be *the* "appropriate law enforcement authority" contemplated by the Legislature in art. 6252–16a.

The County's second argument advances the theory that Moya could not be the "appropriate law enforcement authority" because a single county commissioner, such as he, may act only through the multi-member commissioners court; that is to say, his acts alone may not bind the county. *See, e.g., Tarrant County v. Smith,* 81 S.W.2d 537 (Tex.Civ.App.1935, writ ref'd). The rule the County relies upon is sound; the issue reduces to its applicability in the present case.

## THE STATUTE

The Legislature, in § 2 of art. 6252–16a, prohibits the following acts by counties and other local governmental bodies:

> A [county] may not suspend or terminate the employment of, or otherwise discriminate against, a public employee who *reports a violation of law to an appropriate law enforcement authority* if the employee report is made in good faith.

(emphasis added). Section 3 of the statute authorizes a public employee to sue the governmental body for injunctive relief or damages, or both, for "a violation of this Act...." The following section, § 4, specifies the damages recoverable as actual damages, exemplary damages, costs of court, and reasonable attorney's fees; and, in evident reference to the permitted "injunctive relief," the section authorizes the employee to recover reinstatement to his former position, compensation for wages lost during the period of suspension or termination, and reinstatement of lost "fringe benefits" and "seniority rights." Section 5 of the statute authorizes the attorney general or an "appropriate prosecuting attorney" to recover a civil penalty, in a sum not to exceed $1,000.00, from the "supervisor who suspends or terminates the employment of a public employee for reporting a violation of law under" the statute.

## DISCUSSION AND HOLDINGS

We turn then to the proper meaning to be assigned the statutory expression "an appropriate law enforcement authority," as that expression is used in art. 6252–16a. We must find the meaning from a general view of the statute as a whole, assuming the Legislature intended a meaning that would effectuate the purposes that underlie art. 6252–16a. *Citizens Bank of Bryan v. First State Bank, Hearne,* 580 S.W.2d 344 (Tex.1979).

We hold the text of the statute as a whole evidences two legislative purposes: (1) to protect public employees from retalia-

tion by their employer when, in good faith, the employee reports a violation of law, and (2) to secure in consequence lawful conduct on the part of those who direct and conduct the affairs of public bodies.

■ The text as a whole indicates that the expression "violations of law" was intended to include the violation of rules of conduct prescribed by an official authority, whether the violation carries a *civil or criminal* sanction. *City of Dallas v. Moreau,* 697 S.W.2d 472, 474 (Tex.App.1985, no writ). So much is implicit in § 1(1) of art. 6252–16a where the word "law" is defined to include a "rule" as well as any statute or ordinance under which the rule was adopted.

■ The Texas Agriculture Code contemplates both civil and criminal sanctions for violation of the statutes found in the code or of the rules promulgated by the Department thereunder. The Department itself enforces the civil sanctions in various ways. *See, e.g.,* Tex.Agri.Code Ann. § 75.014 (civil suit by Department for forfeiture of surety bonds given for herbicide application); *id.* at §§ 75.005 & 75.011 (departmental revocation of herbicide permits); *id.* at §§ 76.047, 76.048, 76.116 (departmental cancellation, revocation, suspension and modification of various pesticide permits and licenses); *id.* at § 76.154 (civil suit by Department for injunction); *id.* at § 76.156 (civil suit by Department for penalty). The regular prosecutors and peace officers, having responsibility for enforcement of the criminal laws generally, enforce the criminal sanctions. *See id.* at § 75.024 (criminal statutes pertaining to herbicides); *id.* at § 76.201 (criminal statutes pertaining to pesticides); *see also* Tex. Pen.Code Ann. §§ 1.03(a), 1.07(a)(20); Tex. Code Cr.P.Ann. art. 2.01 (Supp.1988) (district attorneys); *id.* at 2.02 (county attorneys); *id.* at 2.12 (any of some 22 categories of "peace officers," including sheriffs and their deputies and park rangers appointed by the commissioners court, all of whom are directed by art. 2.13 to "prevent" and "suppress crime" and report to a magistrate any "violation of the penal law" within his jurisdiction). In view of the great number and variety of public officers and bodies having the power and duty to enforce the civil and penal sanctions in the Texas Agriculture Code, we believe it obvious that the Legislature intended that the word "appropriate," as used in art. 6252–16a, § 2, should be sufficiently elastic in its meaning to accommodate all such authorities as well as any other civil authorities having powers and duties sufficient to compel obedience to what the law requires in the particular case.

We therefore disagree with the theory that art. 6252–16a, § 2 allows for only one "appropriate" authority in any particular report of a violation of law. The very word "an," as actually used in the statutory expression, contemplates in ordinary usage that there may be more than one such "appropriate" authority. *See Doherty v. King,* 183 S.W.2d 1004, 1007 (Tex.Civ.App. 1944, writ dism'd) ("any" and "an" are synonymous in meaning more than one or many, including an indefinite number); *Hime v. City of Galveston,* 268 S.W.2d 543, 545 (Tex.Civ.App.1954, writ ref'd n.r.e.) ("any" is equivalent to "every" and "all"). More importantly we believe it highly doubtful that the Legislature intended a public employee to bear the risk of guessing erroneously as to the sometimes complex statutory powers committed to a particular public authority, as would be the case under the County's theory that the word "appropriate" means the *exactly correct* "law enforcement authority." Such an interpretation would frustrate rather than serve the statutory purposes; it is, moreover, contradicted by the "good faith" limitation placed by the Legislature itself on the protection afforded by art. 6252–16a: so long as the public employee acts in "good faith," he *is* protected by the statute. This express limitation precludes any *further* narrowing of the statute's protection such as that implied in the exceedingly narrow meaning the County would assign to the word "appropriate."

We hold the statutory expression, "an appropriate law enforcement authority," includes at minimum *any* public authority having the power and duty of inquiring

into the lawfulness of the questioned conduct and causing its cessation if the conduct appears to be in violation of the law. *Cf. City of Dallas v. Moreau,* 697 S.W.2d at 474. Because we hold Colunga reported the violations to such an authority in the present case, we need not address such interesting questions as whether the protection of art. 6252–16a extends to a public employee who reports a violation of law to an authority having *no* such power and duty under the applicable statutes, when the employee believes in good faith that it *does.*

We hold the Commissioners Court of Travis County had, under law, the power and duty to inquire into the lawfulness of its employees' conduct in the application and use of the herbicides and pesticides in question, and the power and duty to stop such conduct if it were in violation of any applicable statute, any ordinance, or any rule of a government body such as the Department.

The Commissioners Court of each Texas county is the governing body of the county, with general control over the county's business conducted as a subdivision of the State. Tex.Const.Ann. art. V, § 18(b) (Supp.1988). The commissioners court has no general police power, such as that possessed by the State and by the many municipalities under the law. The commissioners court does have, however, those powers expressly conferred upon it by the Constitution and by the Legislature, together with such implied powers as are necessary to exercise the powers expressly conferred. *Canales v. Laughlin,* 147 Tex. 169, 214 S.W.2d 451 (1948); *Clark v. Finley,* 93 Tex. 171, 54 S.W. 343 (1899). In that connection, the Legislature has conferred upon the commissioners court the express power of eminent domain to acquire land for use as a public park, with the implied powers of establishing and maintaining such a park, and the express power to hire, supervise, discipline and even discharge the county employees who carry out maintenance work in the park. *See, e.g.,* Tex.Local Gov't Code Ann. §§ 151.001–151.903 (Pamp.1988); *id.* at

§§ 261.001–261.003. Implicit in these express powers is the power to inquire into the lawfulness of employee conduct in performing their assigned work and the power to prevent their unlawful conduct, just as any employer has the power to control his employee's work. These powers exist in the commissioners court whatever may be the powers of other officials to punish illegal employee conduct through civil or criminal proceedings.

We hold, finally, that the meaning of the jury's verdict and the resulting judgment is that Colunga's report to Moya constituted a report to the Commissioners Court of Travis County. It is apparent from the evidentiary record that Colunga reported the violations to Moya in his capacity as a member of the commissioners court, in whose precinct the violations continued to occur, and not to him in any other capacity. Moya was a member of the commissioners court at the time of the report; consequently, he had a duty to bring the reported violations to the attention of the commissioners court of which he was a member. The courts presume that an officer such as he will recognize his duty and act legally and in good faith in that regard. *Callahan v. Stover,* 263 S.W.2d 630 (Tex.Civ.App. 1953, writ ref'd); *Kavanaugh v. Underwriters Life Ins. Co.,* 231 S.W.2d 753 (Tex. Civ.App.1950, writ ref'd); *Angelina County v. Kent,* 374 S.W.2d 313 (Tex.Civ.App. 1963, no writ). The statutory cause of action authorized by art. 6252–16a does not, in any case, require as an element some decision or official action on the report made to it by an employee acting in good faith. Hence, the rule of law cited by the County—that the Commissioners Court can act only as a body—has no application in the case. It is sufficient that Colunga merely reported the violations in good faith.

Finding no error as assigned by the County, we affirm the judgment below.

Affirmed.

### ON MOTION FOR REHEARING

Travis County urges in its motion for rehearing several points to which we should respond briefly.

The County contends first that we have misunderstood and misstated the evidence and the verdict, referring to that part of our opinion wherein we have summarized the controversy between the parties. The County argues that the jury, "[c]ontrary to the Court's assertion, ... specifically *rejected* [much of that] evidence and found that there was no continued retaliation by" the County against Colunga. This is not correct.

The County bases its argument on the "no" answers given by the jury to special-issue inquiries asking whether the County retaliated against Colunga *after her reinstatement.* These "no" answers symbolize merely the jury's *failure to find* on the factual propositions submitted to them and determined nothing.

The County argues next that we erred in our statements that the *County* terminated Colunga's employment, for "the jury found only that ... Colunga's employment was terminated for reporting a violation of law to Richard Moya." In contrast, the County, through its Commissioners Court, reinstated Colunga immediately after the completion of her grievance proceeding and, it is said, never ratified Moya's decision.

The County's argument is transparently incorrect. The jury found specifically that Colunga's employment was "terminated" and it is undisputed that she was employed by the County. Even without that specific finding, however, the trial-court judgment against the County, on Colunga's statutory cause of action, supplies by operation of law the *presumed* finding that the County and not Moya "terminated" her employment. Tex.R.Civ.P.Ann. 279 (Supp.1988); *Smith v. Henger,* 148 Tex. 456, 226 S.W.2d 425, 431 (1950).

The County withdraws from the position originally taken in its brief to this Court, that "the Texas Department of Agriculture is *the* 'appropriate law enforcement authority'" to which Colunga could have reported the violations and thereby come within the protection of the statute. (County's brief, emphasis added). On rehearing, the County argues instead that the Texas Department of Agriculture is simply "the *most*

*appropriate* authority." Suffice it to say that the statute under which Colunga recovered does not require that the violation of law be reported to "the most appropriate" law enforcement authority. Rather, art. 6252-16a, § 2 requires only that the report be made "to *an* appropriate law enforcement authority" (emphasis supplied).

The County contends finally that our decision conflicts with that in the *Moreau* case and that we failed "to consider" *Garza v. City of Mission,* 684 S.W.2d 148 (Tex.App.1984, writ dism'd), the only other appellate opinion that deals with art. 6252-16a at the present time. While we do not adopt the entirety of the reasoning in *Moreau,* we do not reject it either. We do adopt, of course, the principle stated in the *Moreau* opinion—"an appropriate law enforcement authority," within the meaning of art. 6252-16a, § 2, *includes* a public authority having the power and duty of inquiring into the lawfulness of the questioned conduct and causing its cessation if the conduct appears to be a violation of the law. *Moreau,* 697 S.W.2d at 474. That interpretation of the statutory language is sufficient for the present appeal for the reasons given at length above.

The County's contention that we failed "to consider" the *City of Mission* case is incorrect, as is true with most assertions that a court failed "to consider" one thing or another. The *City of Mission* case involved only two issues: (1) whether the trial court abused its discretion in refusing the plaintiff's application for a temporary injunction; and (2) the proper meaning of art. 6252-16a, § 3(b), wherein the Legislature created a rebuttable presumption. Neither of these issues pertains in any way to any matter we are required to decide in the present appeal.

For the foregoing reasons, we overrule the County's motion for rehearing.