TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







ON MOTION FOR REHEARING










NO. 03-95-00021-CV







City of San Antonio, Appellant



v.



Michael Heim, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT


NO. 92-11916, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING







 We withdraw our previous opinion of July 31, 1996 and substitute the following. Michael
Heim recovered judgment for compensatory and punitive damages in his suit against the City of San
Antonio under the Texas Whistleblower Act (the "Act"). See Act of May 22, 1993, 73d Leg., R.S., ch.
268, § 1, 1993 Tex. Gen. Laws 583, 609-11 (Tex. Gov't Code Ann. §§ 554.001-009, since amended)
(hereinafter "Former Code"). The City appeals. We will affirm the judgment.



THE CONTROVERSY


 Heim is employed as a police officer in the "DWI" task force of the San Antonio Police
Department (the "Department"). On November 15, 1991, he arrested an off-duty police officer, Sergeant
Garza, for driving while intoxicated. See Tex. Penal Code Ann. § 49.04 (West 1994). Heim became the
subject of a series of disciplinary suspensions beginning the next day. (1)

 In August 1992, Heim sued the City under the Whistleblower Act alleging the suspensions
were part of a course of discrimination by other officers and supervisors in the Department, taken against
him in retaliation for his arresting Sergeant Garza contrary to an unwritten practice in the Department of not
arresting fellow officers or their family members--a practice of "professional courtesy." The jury answered
special questions in Heim's favor and found $594,000 in compensatory damages (2) and $500,000 in
exemplary damages. The trial court rendered judgment on the verdict. The City's motion for new trial was
overruled by operation of law. This appeal ensued.



LIABILITY UNDER THE WHISTLEBLOWER ACT


 At the relevant time, the Act provided as follows:



A state agency or local government may not suspend or terminate the employment of or
discriminate against a public employee who in good faith reports a violation of law to an
appropriate law enforcement authority.



Former Code § 554.002. On appeal, the City does not dispute that Heim acted in good faith in arresting
Sergeant Garza or that Heim's reports were made to an appropriate law-enforcement authority. (3) Instead,
the City contends in point of error one that Heim did not establish a cause of action because Garza's arrest
was not a "violation of law" within the meaning of the Act. In point of error two, the City re-urges its
contention by assigning error to the trial court's refusal to instruct the jury that a "violation of law" requires
under the Act an "employer-related" violation.

 The city's theory is as follows: To come within the Act, the reported "violation of law" must
pertain to the government entity's internal administration. See, e.g., Texas Dep't of Human Servs. v.
Green, 855 S.W.2d 136, 140 (Tex. App.--Austin 1993, writ denied) (agency employee's report of fraud
and corruption among agency contract-procurement officers); City of Houston v. Leach, 819 S.W.2d
185, 188-89 (Tex. App.--Houston [14th Dist.] 1991, no writ) (auditor's report of illegal acts in use and
furnishing of city property and services); City of Ingleside v. Kneuper, 768 S.W.2d 451, 453 (Tex.
App.--Austin 1989, writ denied) (supervisor's report of building inspector's criminal acts in performing
official duties). Garza's driving on a public street while intoxicated and while off-duty did not involve the
internal administration of the police department; therefore, Heim's report of Garza's violation of law did not
come within the Act. We disagree with the theory. Even if it is a correct theory, however, the evidence
at trial satisfies the distinction claimed in the City's theory.

 The cause of action created in the Whistleblower Act is purely statutory. We have held
the Act has two remedial purposes: (1) to enhance openness in government by protecting public employees
from retaliation by their employer when an employee reports a violation of law in good faith; and (2) to
secure in consequence lawful conduct on the part of those who direct and conduct the affairs of
government. Travis County v. Colunga, 753 S.W.2d 716, 718-19 (Tex. App.--Austin 1988, writ
denied); see also Green, 855 S.W.2d at 142. The elements of the cause of action, at the time material
here, were as follows: (1) a state agency or local government (2) suspends, discharges, or discriminates
(3) against a public employee (4) who reports in good faith a violation of law (5) to an appropriate law-enforcement authority. (4) The statute is not ambiguous in any respect. Neither the right nor the remedy exists
at common law; the provisions of the Act are exclusive and a court may not add to them. See Mingus v.
Wadley, 285 S.W. 1084, 1088 (Tex. 1926). A court may act only in the manner provided in the statute
that created the right. See Bullock v. Amoco Prod. Co., 608 S.W.2d 899, 901 (Tex. 1980). We
therefore are not free to add the limiting qualification the City seeks. 

 The record shows in all events that Heim's report of Garza's violation did pertain to the
internal administration of the Department. Garza's criminal act in driving while intoxicated, if true, was a
violation of his official duty as a police officer to obey as well as enforce the law. Tex. Code Crim. Proc.
Ann. art. 2.13 (West 1979); See Davis v. Passman, 442 U.S. 228, 246 (1979). His intoxication was,
in addition, a violation of Department regulations requiring that police officers maintain at all times their
competency and availability for duty. (5) And the internal discrimination against Heim was, if his evidence is
believed, grounded in Garza's arrest. (6) The practice of such discrimination, which Heim reported to his
superiors and which the jury implicitly believed occurred, itself constitutes a patent violation of law in the
Department's internal administration and is inimical to public safety and an overriding public interest in
genuine and impartial law enforcement. (7)

 We hold Heim's reports came within the letter, spirit, and purpose of the Act. We
therefore overrule points of error one and two. 

 In point of error three, the City contends the evidence is legally insufficient to support the
jury verdict. The City argues that our review of the evidence must be made under the following theory of
causation: "the employee's protected conduct must be such that, without it, the employer's prohibited
conduct would not have occurred when it did." Department of Human Servs. v. Hinds, 904 S.W.2d
629, 636 (Tex. 1995). In contrast, the liability question was submitted to the jury as follows:



Did the City of San Antonio discriminate against Heim in retaliation for reporting in good
faith a violation of law to an appropriate law enforcement authority?



The case was not tried under the Hinds theory and the City did not suggest to the trial court, by request,
objection, or otherwise, that a causation element was omitted from the charge. On appeal, parties are
restricted to the theory on which the case was tried. Davis v. Campbell, 572 S.W.2d 660, 662 (Tex.
1978). We will therefore summarize and review the sufficiency of the evidence under the theory of liability
submitted to the jury. See Syndex Corp. v. Dean, 820 S.W.2d 869, 873 (Tex. App.--Austin 1991, writ
denied); cf. Hinds, 904 S.W.2d at 637-38.

 Numerous witnesses testified that the Department discriminated against Heim in retaliation
for his arresting Garza in violation of the Department's unwritten code of "professional courtesy." (8) After
Garza's arrest, Heim was the subject of nine complaints, made mainly by persons within the Department,
alleging various violations of Department regulations. Following investigations by the Department's Internal
Affairs ("IA") Section, Chief of Police Gibson suspended Heim six times for a total of eighty-six days. (9) In
the eleven years Heim served on the police force before the Garza arrest, Heim averaged less than two
complaints per year, filed mainly by civilians, and received only one three-day suspension in 1989. The
jurors were free to assign weight to the timing, number, and severity of the post-Garza complaints and
disciplinary suspensions in light of Heim's previous conduct record and the date of Garza's arrest. In
addition, the jury could reasonably believe the actions taken against Heim were part of an institutional
practice. Two officers testified they also received suspensions and transfers to other duties following their
reports of misconduct by fellow officers.

 The evidence also reasonably permits an inference that Heim's suspensions resulted from
selective enforcement of Department regulations. Several officers testified that many of the violations for
which Heim was suspended were regularly committed by other officers but did not result in disciplinary
action against the offenders. For example, the evidence showed there had been only one reported violation
of the contraband-search rule by any officer during the previous year but Heim was suspended twice in
seven months, for a total of thirty-one days, when contraband was found on his prisoners. At trial, Chief
Gibson conceded that Sergeant Morales, supervisor of the "Detox" unit, might have selectively enforced
against Heim the contraband-search rule. (10)

 The record contains testimony that during a meeting in March 1992, Sergeants Hooks and
Jacobs, supervisors of the DWI unit, threatened Heim's job security and personal safety. Sergeant Hook
told Heim that he needed to "back off" and start conforming. Hook said he did not want to see Heim get
hurt. Heim was told that he had a wife and family to look after and that he was too old to look for another
job. He was required to attend unusually long meetings with his supervisors and was reprimanded for
deficiencies a fact finder might believe concocted and harassing, such as illegible handwriting.

 Moreover, discriminatory treatment against Heim by numerous fellow officers was so
pervasive under the evidence that the jury could reasonably infer that it was tacitly condoned by the
Department. Heim received "hang-up" calls on his unlisted home telephone, his belongings were stolen,
and his car was twice towed from work. Witnesses testified that other officers refused to sit next to Heim
and the forms of retaliation they planned against Heim for arresting Garza. Most seriously, the record
contains evidence that beginning immediately after Garza's arrest officers failed to respond to Heim's radio
messages requesting back-up assistance in the field, thereby jeopardizing his personal safety and the public
safety. The jurors were free to conclude that such failures were intentional and retaliatory.

 And the evidence reasonably permits an inference that by turning a blind eye to much of
the retaliation Chief Gibson tacitly ratified it. Chief Gibson had five meetings with Heim concerning his
allegations of discrimination and received letters from Heim's attorney regarding those matters. The Chief
explained that he relied on IA to investigate many of Heim's allegations; the evidence suggests, however,
that IA's investigations were not entirely objective or impartial when Heim was the subject. (11) Furthermore,
the record is devoid of evidence that Chief Gibson took any action following Heim's report of the threats
made by Sergeants Hooks and Jacobs. In fact, Chief Gibson assigned Sergeant Jacobs to supervise
Heim's DWI unit a few months after Garza's arrest. The jury could reasonably believe from the evidence
that, in regard to the events for which Heim was suspended, Chief Gibson unjustifiably disregarded Heim's
explanations of the surrounding circumstances and selectively imposed unduly harsh suspensions.

 The evidence, both direct and circumstantial, supports a finding of liability based on the test
of liability submitted to the jury. We therefore overrule point of error three. 

 In point of error four, however, the City contends the test of liability submitted to the jury
was incorrect. The City argues that the trial court committed reversible error by refusing the City's request
for an instruction that liability under the Act must be based on retaliatory conduct engaged in or ratified by
"city officials who possess the power to hire, fire, suspend, demote and promote." The trial court instructed
the jury instead that the City "acts through its officers, agents, and employees."

 The instruction given by the trial court is a correct statement of law. The court in Green
construed the Act to protect a public employee not only from the conduct of an individual supervisor but
also from "the collective acts of the agency, the bureaucracy, the institution, the system that retaliates." 855
S.W.2d at 143, (emphasis added). Thus, had the trial judge granted the City's requested instruction, she
would have misstated the law. 

 In any event, the evidence shows retaliation against Heim by officers holding supervisory
positions in the Department. And there is at least circumstantial evidence that retaliation by lower-ranking
officers was ratified by the Department. (12) Under these circumstances, any error in the submission of the
jury instruction was therefore harmless. Tex. R. App. P. 81(b)(1). We overrule point of error four.



EXEMPLARY DAMAGES


 In point of error five, the City contends the evidence is legally insufficient to support the
jury's finding of malice, a prerequisite to an award of punitive damages under the Act. See Kneuper, 768
S.W.2d at 457; see also Hart, 892 S.W.2d at 927. The issue of malice was submitted to the jury
(conditioned on a finding of liability) with the following definition:



"[M]alice" means (a) conduct in retaliation that is intended by the City of San Antonio to
cause Michael Heim substantial injury; or (b) an act carried out by the City of San Antonio
with a flagrant disregard for the rights of Plaintiff and with actual awareness on the part of
the City of San Antonio that the act will, in reasonable probability, result in harm.



The City contends punitive damages are not recoverable under the Act unless the plaintiff proves malice
or evil intent on the part of a "policy-making official" of the municipality, in this case Chief Gibson. (13) The
City failed to submit an instruction regarding its theory. The City argues in point of error four, nevertheless,
that the trial court, in submitting the malice issue, committed reversible error by instructing the jury generally
that "the City acts through its officers, agents, and employees."

 Nothing in the Act itself suggests that punitive damages may only be assessed for the
actions of the highest-ranking official in a department. See Former Code § 554.003. Such a restriction
would be inconsistent with the policy of protecting employees from institutional retaliation. As previously
discussed, the Act protects against pervasive retaliation by an entire institution as well as acts attributable
to a single official. See Green, 855 S.W.2d at 143. We find the record contains evidence from which the
jury could reasonably infer that the Department as an institution acted with malice in retaliating against Heim.

 Because the evidence is sufficient to support the jury's finding of malice on the part of the
City, we overrule point of error five. We also overrule the remainder of point of error four. Based on the
record before us, moreover, any error in the submission of the challenged jury instruction was harmless. 
See Tex. R. App. P. 81(b)(1).

 In point of error six, the City contends in the alternative that it is entitled to a new trial
because the jury's $500,000 award of punitive damages is excessive. The purpose of appellate review of
punitive-damage awards is to make "certain that the punitive damages are reasonable in their amount and
rational in light of their purpose to punish what has occurred and to deter its repetition." Pacific Mut. Life
Ins. Co. v. Haslip, 499 U.S. 1, 21 (1991). We may reverse a punitive-damage award or suggest a
remittitur only if we determine the evidence supporting the award is so factually insufficient or the verdict
is so against the great weight and preponderance of the evidence as to be manifestly unjust. 
Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 30 (Tex. 1994); see also Pool v. Ford Motor Co.,
715 S.W.2d 629, 635 (Tex. 1986). We should consider in our assessment the following factors:



(1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of
culpability of the wrongdoer; (4) the situation and sensibilities of the parties concerned; and
(5) the extent to which such conduct offends a public sense of justice and propriety.



Alamo Nat'l Bank v. Kraus, 616 S.W.2d 908, 910 (Tex. 1981). When reviewing a punitive-damage
verdict for excessiveness, we must detail the relevant evidence and explain why, in light of the Kraus
factors, the evidence either supports or does not support the punitive-damage award. Ellis County State
Bank v. Keever, 888 S.W.2d 790, 798 (Tex. 1994); Moriel, 879 S.W.2d at 31. We have detailed the
evidence previously.

 We believe the retaliation shown by the evidence is precisely the kind of wrongdoing that
punitive damages were meant to punish and deter. We refer first to the character of the conduct and its
effect upon the public sense of justice and propriety. The retaliation against Heim and the practice of
"professional courtesy" -- a self-serving neglect to enforce the law impartially as shown in the evidence --
are particularly repugnant in this respect. The public trusts police officers unquestioningly because of their
sworn duty to uphold the law and enforce it impartially, their stern and often dangerous duties, the reports
of their not infrequent heroism, and prudence discretion with which they ordinarily exercise the awesome
discretionary powers vested in them as peace officers to secure public safety and order. Police misconduct
fractures that trust.

 Concerning Heim individually, the evidence permitted the jury to believe that supervising
officers wrongfully used their powers to coerce Heim to violate his sworn duties and to injure him in his
most intimate interests: his safety, his family, and his career. Selective enforcement of Department
regulations resulted in complaints, investigations, and disciplinary suspensions that appear on his permanent
employment record. Lower-level officers, in addition to bullying Heim regularly, exposed him to danger
by refusing to provide him with back-up assistance. Evidence was given that the retaliation was pervasive. 
The jury could reasonably believe the acts of retaliation were condoned by the Department. We will
discuss further, in relation to mental-anguish damages, the situation and sensibilities of the parties involved.

 The City emphasizes evidence in the record showing that Chief Gibson did not encourage
or participate in the retaliation. At trial, Chief Gibson testified that he always treated Heim fairly when
imposing suspensions and that he would not condone retaliation by members of the Department. The
evidence shows that on a few occasions Chief Gibson indeed reduced the number of days of suspension
recommended by IA. In addition, officers testified that Chief Gibson did not affirmatively suggest that they
discriminate against Heim. The jurors were nevertheless free to discount this evidence of silence and
conclude that Chief Gibson participated in the retaliation tacitly by condoning the numerous acts of
retaliation shown by the evidence and brought to his attention without effect. The credibility of witnesses
and the meaning and weight proper to be assigned their testimony were, of course, for the jury to
determine.

 We conclude in light of the Kraus factors that we may not set aside the sum awarded here
as punitive damages on the ground that it is disproportionate to the severity of the wrongs and not
reasonably related to the objectives of punishment and deterrence underlying such awards. We overrule
point of error six. 



MENTAL-ANGUISH DAMAGES
 

 In point of error seven, the City contends the jury awards of $250,000 for past mental
anguish and $250,000 for future mental anguish are excessive and not justified by the evidence. (14) A plaintiff
may establish the fact of mental anguish by direct evidence of the nature, duration, or severity of suffering
that resulted in a substantial disruption of his daily routine. Woodruff, 901 S.W.2d at 444. Absent such
direct evidence, to prove mental anguish a plaintiff must show a high degree of mental pain and distress that
is more than mere worry, anxiety, anger, vexation, or embarrassment. Id.; Kneuper, 768 S.W.2d at 460.

 We hold the evidence is legally and factually sufficient to satisfy these tests. Heim testified
that the continuing episodes of retaliation adversely affected his enthusiasm and ability to do his job. 
Although he very much enjoyed police work, he was forced to remain away from work (by using several
hundred hours of his compensatory time) because of his fear of retaliation by Sergeant Jacobs and others. 
Heim's deteriorating working conditions caused him continuous distress while at work; for example, he was
forced to check his automobile regularly out of fear that other officers might have planted contraband there.

 The jury could reasonably conclude that the numerous suspensions Heim received not only
resulted in injury to his reputation and career as a law-enforcement officer but also caused Heim to suffer
public and private humiliation. Heim's suspensions, for example, prevented his training junior officers in the
field; as a result, he believed that in the eyes of others he had "nothing to offer" as a career police officer.

 Most importantly, the evidence showed that Heim feared regularly for his physical safety,
as when other officers refused to respond to his requests for back-up assistance. Heim stated he could no
longer do his job properly because he feared "what might happen to [him] on the street from other officers
or other supervisors who were supposed to support [him]." He testified:



[I] can't count on the people that are supposed to be here to support me . . . . I have
much less fear of people on the street than I have of some of the police officers that I work
with and around. The only thing worse than having a bunch of crooks after you if you are
a policeman is having a bunch of cops after you, in my opinion, because they have the
means and the methods and the ways to get back at you. 



 Heim gave in evidence his opinions as follows: his unjustified reputation as a troublemaker
will affect adversely his ability to continue his career as a police officer or to pursue work in related fields;
although the discrimination abated with his filing the present lawsuit, it will resume and intensify with the
conclusion of the suit resulting in even greater danger to himself than in the past; and the resulting fear,
worry, and anxiety will prevent his lasting even five more years of the twenty-five or thirty years he intended
to serve on the force before the discrimination began. 

 There is in the evidence nothing to contradict the foregoing evidence. Instead, the
Department's theory of the evidence and the case was that the discrimination found by the jury simply never
occurred.

 Jurors are best positioned to determine from their own experience the extent to which a
defendant's conduct caused compensable mental anguish. Kneuper, 768 S.W.2d at 460. Heim described
the nature and severity of the mental anguish he suffered. The evidence of threats against Heim's physical
safety as well as injury to his career and reputation are sufficient qualifying events to support an inference
that Heim suffered and will in reasonable probability continue to suffer mental anguish as a result of the
retaliation. See Woodruff, 901 S.W.2d at 445; see also Hart, 892 S.W.2d at 927. The jury were not
required to reject the details, credibility, and force of Heim's testimony; they were free to believe his
testimony, corroborated by other witnesses, and assign it the weight reflected in their verdict. For these
reasons, we cannot hold the sums found by the jury for past and future mental anguish are excessive. See
Pope v. Moore, 711 S.W.2d 622, 624 (Tex. 1986). We overrule point of error seven.

 We affirm the trial-court judgment.



 

 John Powers, Justice

Before Justices Powers, Aboussie and Kidd 

Affirmed

Filed: October 9, 1996 

Publish

1.   The suspensions from duty were as follows: five days on November 16, 1991, for having
previously criticized a judge's decision; five days for transporting multiple suspects on November
17, 1991, in violation of Department policy; fifteen days for reporting untruthfully events
surrounding an arrest Heim made on November 18, 1991; one day for failing adequately to
search an arrested person found with a knife at the "Detox" facility in November 1991; thirty
days for untruthfulness and failing adequately to search an arrested person found with a pocket
knife in May 1992; and thirty days for handling an injured person improperly in June 1992, and
for failing to follow Department procedure pertaining to suspects with a breath-test result less
than .10 amount of alcohol.
2.   The compensatory-damage awards are as follows: (1) $15,000 for loss of past earning
capacity; (2) $40,000 for loss of future earning capacity; (3) $35,000 for loss of retirement and
other employee benefits; (4) $250,000 for past mental anguish; (5) $250,000 for future mental
anguish; and (6) $4,000 for arbitration and out-of-pocket expenses plus pre-judgment and post-judgment interest.
3.   Heim reported Garza's offense to the Department and to the Bexar County District
Attorney. Heim reported to William Gibson, the Police Chief, the unlawful acts of retaliation and
discrimination against Heim discussed in our opinion.
4.   The current version of the Act protects against retaliation for "reports of violation of law
by the entity or another public employee." Tex. Gov't Code Ann. § 554.002 (West Supp. 1996)
(emphasis added). The addition of the emphasized portion in the disjunctive further suggests that the
reported violation need not concern only internal wrongdoing by the government entity. 
5.   A reported "violation of law" to which the Act applies includes violation of a provision of a
civil or criminal statute, state or federal constitution, or an administrative rule or regulation. See
Castaneda v. Texas Dep't of Agric., 831 S.W.2d 501, 503 (Tex. App.--Corpus Christi 1992, writ
denied); see also Former Code § 554.001(1); Colunga, 753 S.W.2d at 719.
6.   The testimony of nine police officers as well as the events surrounding Garza's arrest
indicate the existence of the practice. After being stopped, Sergeant Garza ordered Heim to call
a supervisor to the scene before arresting him and later filed a complaint against Heim for not
following this order. Garza was released from the "Detox" facility before being taken to a
magistrate, contrary to the standard procedure following an arrest. Notwithstanding that Heim
and his supervisor attested to Garza's drunkenness, Chief of Police Gibson took no disciplinary
action against Garza and the charges were dropped.


 Sergeant Jacobs, who, according to testimony, was assigned to the DWI unit after Garza's
arrest to "slow a train down that was out of control," promulgated a new procedure. This
procedure, commonly referred to as the "Michael Heim procedure," requires that a supervisor
be called to the scene before an off-duty officer may be arrested for driving while intoxicated. 
The merit in this procedure is obvious. It was not in effect, however, when Heim arrested Garza.
7.   A police officer's failure to arrest another for violating a penal law may be construed as a
dereliction of duty as well as a violation of the Texas Penal Code. See Tex. Code Crim. Proc. Ann.
art. 2.13 (West 1979); see also Tex. Penal Code Ann. § 38.05 (criminal offense to provide another with
means of avoiding arrest with intent to hinder arrest, prosecution, conviction, or punishment for commission
of criminal offense); Kousal v. Texas Power & Light Co., 179 S.W.2d 283, 287-88 (Tex. 1944). 
8.   The City does not contest liability on the ground that the City is not vicariously liable for the
actions of the Department. The Department and the City are the same unit of government for
purposes of the Act. See Wichita County v. Hart, 892 S.W.2d 912, 929 (Tex. App.--Austin 1994),
rev'd on other grounds, 917 S.W.2d 779 (Tex. 1996).
9.   Under Department rules, suspensions may be imposed only by the Chief of Police based
upon an investigation by the Internal Affairs Section of an alleged violation of Department
regulations. The Internal Affairs Section is composed entirely of sergeants, officers holding
higher rank than Heim.
10.  Heim testified without objection that Sergeant Morales specifically instructed detention
guards to search Heim's prisoners more carefully than other officers' prisoners and to notify
Morales in order that he might personally supervise the searches of Heim's prisoners.
11.  As mentioned previously, Heim was suspended when IA concluded he failed to follow a
required Department procedure pertaining to suspects whose breath test showed less than .10
quantity of alcohol. The procedure was purportedly promulgated orally by Sergeant Jacobs
during the course of a meeting of the DWI unit. Heim tape recorded the meeting. The recording
demonstrated that no such order was promulgated. Concerning his suspension for transporting
multiple suspects, Heim adduced evidence that IA investigating officers failed to inquire into
Heim's claim that his action was justified in the circumstances because other officers failed to
respond to his radio message requesting back-up assistance.
12.  An exhaustion of administrative remedies, as required by the Act, provides the
governmental entity an opportunity to correct a problem before subjecting itself to liability for
retaliation solely by lower-level employees. See Former Code § 554.006; House Research
Organization, Bill Analysis, Tex. H.B. 1405, 71st Leg., R.S. (1989); see also Public Util. Comm'n v.
Pedernales Elec. Coop., 678 S.W.2d 214, 220 n.3 (Tex. App.--Austin 1984, writ ref'd n.r.e.).


 In addition to the meetings with Chief Gibson, Heim brought his allegations of retaliation to the
Department's attention through the available grievance procedures by arguing on administrative appeal of
his suspensions that he was being singled out by supervising officers for selective enforcement of the rules
and that at least some of his rule violations were justified under the circumstances because, for instance,
other officers failed to respond to his requests for back-up assistance.
13.  The City cites City of Gladewater v. Pike, 727 S.W.2d 514, 523 (Tex. 1987), for this
proposition. Gladewater dealt with whether punitive damages were recoverable, although not authorized
by statute, in an action against a municipality for negligence in the exercise of its proprietary functions. See
Gladewater, 727 S.W.2d at 519. The holding is inapposite in whistleblower actions because exemplary
damages are specifically authorized by the Act. See Former Code § 554.003. In any event, the term
"policy-making official" as used in Gladewater has the potential to encompass a wide array of city
employees to which an authority to act is delegated. See City of San Antonio v. Rodriguez, 856 S.W.2d
552, 562 (Tex. App.--San Antonio 1993, writ denied).
14.  In regard to this point of error, the City argues that the mental anguish Heim suffered must
result from the actions of Chief Gibson. The argument fails to recognize that mental anguish
damages are based, after an initial finding of the defendant's liability, on the type and severity
of the plaintiff's suffering. See Parkway v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995). We have
previously discussed, in our disposition of points of error three through five, the issue of institutional
retaliation. See also Green, 855 S.W.2d at 143. 


other for violating a penal law may be construed as a
dereliction of duty as well as a violation of the Texas Penal Code. See Tex. Code Crim. Proc. Ann.
art. 2.13 (West 1979); see also Tex. Penal Code Ann. § 38.05 (criminal offense to provide another with
means of avoiding arrest with intent to hinder arrest, prosecution, conviction, or punishment for commission
of criminal offense); Kousal v. Texas Power & Light Co., 179 S.W.2d 283, 287-88 (Tex. 1944). 
8.   The City does not contest liability on the ground that the City is not vicariously liable for the
actions of the Department. The Department and the City are the same unit of government for
purposes of the Act. See Wichita County v. Hart, 892 S.W.2d 912, 929 (Tex. App.--Austin 1994),
rev'd on other grounds, 917 S.W.2d 779 (Tex. 1996).
9.   Under Department rules, suspensions may be imposed only by the Chief of Police based
upon an investigation by the Internal Affairs Section of an alleged violation of Department
regulations. The Internal Affairs Section is composed entirely of sergeants, officers holding
higher rank than Heim.
10.  Heim testified without objection that Sergeant Morales specifically instructed detention
guards to search Heim's prisoners more carefully than other officers' prisoners and to notify
Morales in order that he might personally supervise the searches of Heim's prisoners.
11.  As mentioned previously, Heim was suspended when IA concluded he failed to follow a
required Department procedure pertaining to suspects whose breath test showed less than .10
quantity of alcohol. The procedure was purportedly promulgated orally by Sergeant Jacobs
during the course of a meeting of the DWI unit. Heim tape recorded the meeting. The recording
demonstrated that no such order was promulgated. Concerning his suspension for transporting
multiple suspects, Heim adduced evidence that IA investigating officers failed to inquire into
Heim's claim that his action was justified in the circumstances because other officers failed to
respond to his radio message requesting back-up assistance.
12.  An exhaustion of administrative remedies, as required by the Act, provides the
governmental entity an opportunity to correct a problem before subjecting itself to liability for
retaliation solely by lower-level employees. See Former Code § 554.006; House Research
Organization, Bill Analysis, Tex. H.B. 1405, 71st Leg., R.S. (1989); see also Public Util. Comm'n v.
Pedernales Elec. Coop., 678 S.W.2d 214, 220 n.3 (Tex. App.--Austin 1984, writ ref'd n.r.e.).


 In addition to the meetings with Chief Gibson, Heim brought his allegations of retaliation to the
Department's attention through the available grievance procedures by arguing on administrative appeal of
his suspensions that he was being singled out by supervising officers for selective enforcement of the rules
and that at least some of his rule violations were justified under the circumstances because, for instance,
other officers failed to respond to his requests for back-up assistance.
13.  The City cites City of Gladewater v. Pike, 727 S.W.2d 514, 523 (Tex. 1987), for this
proposition. Gladewater dealt with whether punitive damages were recoverable, although not authorized
by statute, in an action against a municipality for negligence in the exercise of its proprietary functions. See
Gladewater, 727 S.W.2d at 519. The holding is inapposite in whistleblower actions because exemplary
damages are specifically authorized by the Act. See Former Code § 554.003. In any event, the term
"policy-making official" as used in Gladewater has the potential to encompass a wide array of city
employees to which an authority to act is delegated. See City of San Antonio v. Rodriguez, 856 S.W.2d
552, 562 (Tex. App.--San Antonio 1993, writ denied).
14.  In regard to this point of error, the City argues that the mental anguish Heim suffered must
result from the actions of Chief Gibso