TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00398-CV






Burnet County Sheriff's Department and Burnet County, Texas, Appellants



v.



Zarina Carlisle, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 99-13922, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING





 Appellee Zarina Carlisle brought an action against Burnet County Sheriff's
Department and Burnet County, Texas (collectively "Burnet County") for wrongful termination
under the Texas Whistleblower Act. See Tex. Gov't Code Ann. § 554.002 (West 1994 & Supp.
2001) & § 554.0035 (West Supp. 2001). Burnet County brings this interlocutory appeal
contending that the district court erroneously denied its plea to the jurisdiction.(1) Raising a single
issue, Burnet County argues that Carlisle has not alleged conduct constituting a "violation of law"
sufficient to waive Burnet County's sovereign immunity under the Whistleblower Act. We reverse
the district court's denial of Burnet County's plea to the jurisdiction. 


Facts and Procedural Background

 From March 1998 to November 1999, Carlisle worked as a senior correctional
officer at the Burnet County Jail.(2) On February 17, 1999, an incident occurred between Carlisle
and her immediate supervisor, Captain Wendell Gilmore. Carlisle asked Gilmore whether an
inmate held in the holding cell of the jail was entitled to a visit. Gilmore responded, "Who the hell
authorized the visit? Find out what damn officer did it." As Carlisle began to review a list of
inmates, Gilmore exclaimed, "God Damn it, I just said do it! Let him have the visit!" 

 Carlisle alleged that over the next few months she and others observed Gilmore
"curse" and "bad mouth others." In mid-September 1999, an inmate complained to Carlisle that
Gilmore had cursed at him and at the jail cook. On September 21, 1999, Carlisle reported
Gilmore's conduct to Sheriff Joe Pollack. On October 28 and 29, Carlisle received two written
warnings from Pollack allegedly when she failed to enter commitment orders as directed and for
telling another officer, "Don't sweat it." In the second warning, she was advised that any further
violation could result in her termination. On November 8, 1999, Captain Gilmore asked for
Carlisle's resignation. Carlisle refused and was fired. The next day, Carlisle asked Sheriff
Pollack to provide the reasons for her termination. On November 12, Carlisle delivered a letter
to County Judge Martin McLean complaining that she was being retaliated against for her report
of Gilmore's "unprofessional conduct."(3) In her petition, Carlisle did not allege that she reported
a violation of law to Sheriff Pollack or Judge McLean. 

 Carlisle filed a whistleblower suit against Burnet County, contending that the sheriff
fired her in retaliation for reporting a violation of law. In her original petition,(4) Carlisle alleged
that Gilmore's conduct violated a rule of conduct in the Burnet County personnel policies. She

further alleged that his conduct violated the professionalism standards of the Texas Commission
on Law Enforcement Officer Standards and Education ("TCLEOSE standards") and that these
"Rule of Conduct violations are sufficient to constitute a 'violation of law' under the
Whistleblower Act." 

 In her sixth amended petition, Carlisle alleged that, in addition to violating the
county's personnel policies, Gilmore's conduct constituted disorderly conduct. She also asserted
that, because she was terminated for reporting a "violation of a rule of conduct or law," Burnet
County waived its sovereign immunity. Burnet County filed a plea to the jurisdiction, arguing that
its sovereign immunity from suit deprived the trial court of jurisdiction. The trial court denied
the plea. On appeal, Burnet County challenges the denial of its plea to the jurisdiction. 



Standard of Review

 Because subject matter jurisdiction presents a legal question, we review the district

court's ruling on the plea to the jurisdiction de novo. Mayhew v. Town of Sunnyvale, 964 S.W.2d
922, 928 (Tex. 1998). A plea to the jurisdiction contests the district court's authority to consider
the subject matter of the cause of action. Bland Indep. Sch. Dist. v. Blue, 44 Tex. Sup. Ct. J.
125, 2000 Tex. LEXIS 106, at *17 (Dec. 7, 2000); City of Austin v. L.S. Ranch, Ltd., 970
S.W.2d 750, 752 (Tex. App.--Austin 1998, no pet.). We are mindful of our limited role here:
Our task is to take as true the facts pleaded in the petition, and to determine whether those facts
support jurisdiction in the trial court.(5) Texas Ass'n of Bus. v. Texas Air Control Bd., 852 S.W.2d
440, 446 (Tex. 1993); University of Tex. Med. Branch v. Hohman, 6 S.W.3d 767, 771 (Tex.
App.--Houston [1st Dist.] 1999, pet. dism'd); Curbo v. State, 998 S.W.2d 337, 341 (Tex.
App.--Austin 1999, no pet.); Liberty Mut. Ins. Co. v. Sharp, 874 S.W.2d 736, 739 (Tex.
App.--Austin 1994, writ denied). The plaintiff must allege facts that affirmatively demonstrate
the court's jurisdiction to hear the cause. Texas Ass'n of Bus., 852 S.W.2d at 446. The
allegations in the petition are to be construed in favor of the plaintiff. Id.; Peek v. Equipment
Serv. Co., 779 S.W.2d 802, 804 (Tex. 1989).


DISCUSSION


Sovereign Immunity

 Because governmental immunity from suit defeats a trial court's subject matter
jurisdiction, it is properly asserted in a plea to the jurisdiction. Texas Dep't of Transp. v. Jones,
8 S.W.3d 636, 637 (Tex. 1999); Federal Sign v. Texas S. Univ., 951 S.W.2d 401, 405 (Tex.
1997); Missouri Pac. R.R. Co. v. Brownsville Navigation Dist., 453 S.W.2d 812, 814 (Tex.
1970).(6) The party suing the governmental entity must establish the state's consent, which may be
alleged either by reference to a statute or to express legislative permission. Jones, 8 S.W.3d at
637; Missouri Pac. R.R. Co., 453 S.W.2d at 814. "The courts of our state require clear and
unambiguous legislative expression before they will hold that sovereign immunity has been
waived." Kerrville State Hosp. v. Fernandez, 28 S.W.3d 1, 3 (Tex. 2000).

 The Whistleblower Act contains an express waiver of the state's sovereign
immunity. Tex. Gov't Code Ann. § 554.0035 ("Sovereign immunity is waived and abolished to
the extent of liability for the relief allowed under this chapter for a violation of this chapter."). 
In effect, this waiver permits a district court to exercise jurisdiction once a plaintiff sufficiently
pleads a claim under the Whistleblower Act. See Federal Sign, 951 S.W.2d at 405; Hohman, 6
S.W.3d at 772. Relying upon the express waiver set forth in the statute, Carlisle asserts that, once
she alleged in her petition that she reported conduct violative of the county's personnel policies,
Burnet County waived its sovereign immunity. The legislative imposition of liability upon
governmental entities is delimited, however, by sections 554.001 and 554.002 of the
Whistleblower Act itself, which defines the conduct for which immunity is waived. Tex. Gov't
Code Ann. §§ 554.001, .002 (West 1994 & Supp. 2001). Only causes of action and remedies
authorized by the statute are permitted. Cf. City of LaPorte v. Barfield, 898 S.W.2d 288, 299
(Tex. 1995). Where immunity has been expressly waived by the Legislature, the court must
determine the scope of the waiver from the language of the statute. Mount Pleasant Indep. Sch.
Dist. v. Estate of Lindburg, 766 S.W.2d 208, 211 (Tex. 1989). The issue presented, then, is
whether the factual allegations in Carlisle's petition state a cause of action under the Whistleblower
Act.

 Although Carlisle is not clear as to the wrongful acts committed, her petition alleges
that she was an employee of Burnet County and that she was terminated because she reported
Gilmore's use of profanity. Specifically, she alleges that "on or about September 21, 1999,
Plaintiff spoke with Sheriff Pollock about this unprofessional conduct by Gilmore."(7)

 Burnet County contends that the trial court erred in denying its plea to the
jurisdiction because Carlisle failed to sufficiently allege that she was terminated for reporting a
"violation of law" as that term is defined by the Whistleblower Act. In her sixth amended petition,
Carlisle alleges that Gilmore's cursing violated two laws: (i) a rule of conduct outlined in the
county's personnel policies and (ii) the disorderly conduct statute of the Texas Penal Code. See
Tex. Penal Code Ann. § 42.01 (West 1994 & Supp. 2001). Burnet County argues that, however
they may be characterized, violations of personnel policies do not constitute "violations of law"
under the Whistleblower Act. Because Carlisle did not, as a matter of law, report a "violation of
law," as required by the statute, it necessarily follows, and we hold, that she failed to invoke the
district court's jurisdiction.


The Texas Whistleblower Act

 The Whistleblower Act prohibits a state or local governmental entity from
suspending or terminating the employment of a public employee who "in good faith reports a
violation of law by the employing entity or another public employee to an appropriate law
enforcement authority." Tex. Gov't Code Ann. § 554.002(a). The Whistleblower Act "protects
public employees who attempt to report illegal activity." Wichita County v. Hart, 917 S.W.2d
779, 784 (Tex. 1996). The Act "is designed to enhance openness in government and compel the
government's compliance with the law by protecting those who inform authorities of wrongdoing." 
Castaneda v. Texas Dep't of Agric., 831 S.W.2d 501, 503 (Tex. App.--Corpus Christi 1992, writ
denied). In considering the scope of the Act, this court has recognized that the Whistleblower Act
has been invoked on behalf of "public employees who are fired in retaliation for reporting their
employers' violations of law that are detrimental to the public good or society in general." Stinnett
v. Williamson County Sheriff's Dep't, 858 S.W.2d 573, 575 (Tex. App.--Austin 1993, writ
denied) (emphasis omitted) (citing Johnston v. Del Mar Distrib. Co., 776 S.W.2d 768, 772 (Tex.
App.--Corpus Christi 1989, writ denied)). As a remedial statute, we construe the Act liberally. 
Fuchs v. Lifetime Doors, Inc., 939 F.2d 1275, 1281 (5th Cir. 1991). 

 The entirety of the conduct complained of stems from Carlisle's encounter with
Gilmore over the jail visitation policy. Although she alleges additional instances of "cursing" and
"bad-mouthing," she does not set forth additional facts. The only facts before us then that may
form the basis of the whistleblowing cause of action are those related to the verbal exchange over
the visitation policy. We must determine whether Carlisle alleges conduct that is actionable under
the Whistleblower Act. 

 The cause of action created in the Whistleblower Act is purely statutory. It creates
a right and provides a remedy unknown to the common law of Texas. Hart, 917 S.W.2d at 782;
City of San Antonio v. Heim, 932 S.W.2d 287, 290 (Tex. App.--Austin 1996, writ denied). To
prevail on her claim under the Act, Carlisle must allege the existence of each of the following
elements: (1) she is a public employee; (2) she acted in good faith in making a report; (3) the
report involved a violation of law; (4) the report was made to an appropriate law enforcement
authority; and (5) she suffered retaliation as a result of making the report. See Tex. Gov't Code
Ann. § 554.002(a); Heim, 932 S.W.2d at 290. Carlisle properly alleged that she was a public
employee, that she acted in good faith in making the report,(8) that she made reports to a law
enforcement authority, and that she was terminated in retaliation for her report. By its plea to the
jurisdiction, Burnet County contends that Carlisle failed to allege that the report involved a
"violation of law" sufficient to invoke the trial court's jurisdiction under the Whistleblower Act. 
We agree with Burnet County's position.

 The Whistleblower Act defines "law" as: "(A) a state or federal statute; (B) an
ordinance of a local governmental entity; or (C) a rule adopted under a statute or ordinance." Tex.
Gov't Code Ann. § 554.001. The phrase "reports a violation of law" has been interpreted broadly. 
It includes "any disclosure of information regarding a public servant's employer tending to directly
or circumstantially prove the substance of a violation of criminal or civil law, the State or Federal
Constitution, statutes, administrative rules or regulations." Davis v. Ector County, 40 F.3d 777,
785 (5th Cir. 1994); Castaneda, 831 S.W.2d at 503-04; accord Heim, 932 S.W.2d at 291 n.5. 

 Relying on our decision in Travis County v. Colunga, Carlisle contends that, by
reporting a violation of a rule of the Burnet County personnel policies, she satisfied the pleading
requirements of the Whistleblower Act because the rule is "ground in law."(9) See Travis County
v. Colunga, 753 S.W.2d 716, 719 (Tex. App.--Austin 1988, writ denied). In Colunga, a county
employee reported to her supervisors that county employees were not taking proper safety
precautions in their use and storage of pesticides and herbicides on public playgrounds. Id. at 717. 
The sole issue on appeal was whether her report of the various violations to a county
commissioner was made to the "appropriate law enforcement authority," a term not defined in the
statute. Id. at 718. In considering the breadth of the Act's application to the various public
officers and bodies with authority to enforce the Texas Agriculture Code, this Court interpreted
the phrase broadly, holding that the Commissioners Court of Travis County was an "appropriate
law enforcement authority" because, as a matter of law, it had the power and duty to inquire into
the lawfulness of the handling of pesticides and herbicides in question and to stop any unlawful
conduct. Id. at 719-20. Because the Legislature had failed to define "appropriate law enforcement
authority," we were called upon to construe the phrase. Id. at 718.

 In Colunga, the plaintiff alleged violations of various statutes as well as rules
promulgated by the Texas Department of Agriculture. Id. at 717. We reasoned in dicta that the
phrase "violations of law" was intended "to include the violation of rules of conduct prescribed by
an official authority, whether the violation carries a civil or criminal sanction." Id. at 719.

 Here, Carlisle argues that she reported a violation of a "law," because Gilmore
violated a rule of conduct that "was ground in and supported by law." Carlisle identifies this "rule"
specifically as section 2.01 of the "Personnel Policies for the County of Burnet," which reads as
follows: 


The County of Burnet is a public tax-supported organization. Its employees must
adhere to high standards of public service that emphasize professionalism, courtesy
and avoidance of even the appearance of illegal or unethical conduct. Employees
are expected . . . to maintain good moral conduct, and to do their part in
maintaining good relationships with the public, with other government employees
and officials, with their supervisors, and with fellow employees.(10)



Carlisle contends that this personnel policy was promulgated "under a statute," namely, a standard
established by the Texas Commission on Law Enforcement Officer Standards and Education ("the
Commission"). We are not convinced by this argument.

 Unlike the undefined phrase "appropriate law enforcement authority," the
Legislature saw fit to define the types of "laws" that would fall within the Act. That the phrase
at issue has been defined broadly does not mean that its meaning is limitless. Courts considering
the issue have uniformly held that the definition of "law" in section 554.001 does not include
violations of internal policy unless promulgated pursuant to statute or ordinance. Harris County
Precinct Four Constable Dep't v. Grabowski, 922 S.W.2d 954, 955 (Tex. 1996) (violation of
internal policy insufficient); Ruiz v. City of San Antonio, 966 S.W.2d 128, 130 (Tex. App.--Austin
1998, no pet.).

 In Ruiz v. City of San Antonio, Ramon Ruiz sued his employer, the City of San
Antonio, alleging that he was suspended in retaliation for reporting violations of the law by police
officers. Ruiz, 966 S.W.2d at 129. In reversing the trial court's grant of summary judgment in
favor of the City, we reasoned that while the Act does not protect a report of conduct that only
violates an internal policy manual, Ruiz had alleged that the reported conduct violated the law,
including theft, stealing, and criminal conspiracy. Id. at 130. The rationale we adopted in Ruiz
is of no avail to Carlisle here. Unlike Ruiz, where the plaintiff "clearly alleged the reported
conduct violated a criminal statute," Carlisle alleged only that she reported "unprofessional
conduct," which resulted in her termination. Id. at 131. In enacting the Whistleblower Act, it was
not the Legislature's "intent to protect miscellaneous complaints and discussions with fellow
workers." City of Dallas v. Moreau, 697 S.W.2d 472, 475 (Tex. App.--Dallas 1985, no writ).

 The TCLEOSE standard that Gilmore is alleged to have violated provides,
"'Professional Attitude' means living by the rules. In the correctional setting rules are very
important. Officers must encourage respect for the rules by following them personally." In her
petition, Carlisle alleges that "[t]his standard was promulgated pursuant to and under the authority
of the Government Code in . . . Chapter 1701 of the Texas Occupation Code." The Legislature
has authorized the Commission to "establish minimum standards relating to competence and
reliability, including educational, training, physical, mental, and moral standards, for licensing
as an officer, county jailer, or public security officer." Tex. Occ. Code Ann. § 1701.151(2) (West
2001); Dixon v. McMullen, 527 F. Supp. 711, 715 (N.D. Tex. 1981) (recognizing the scope of
the Commission's rulemaking authority as relating to "minimum . . . standards for admission to
employment and certification"). To the extent that the County promulgates rules relating to
eligibility for employment and the certification of officers, county jailers, or public security
officers, the standards may specify minimum standards for county employees. See Tex. Occ.
Code Ann. § 1701.003(a)(1) (West 2001) (stating that "[e]xcept as expressly provided by this
chapter, this chapter does not . . . limit the powers or duties of a municipality or county"). 
Because the personnel policy that Carlisle claims was violated does not address admission to
employment or the certification of an officer, a county jailer, or a public security officer, or
reference the standards in any manner, we conclude that it was not promulgated under the
standards. See Rodriguez v. Laredo Indep. Sch. Dist., 82 F. Supp. 2d 679, 684 (S.D. Tex. 2000). 
 Carlisle alleges further that this policy was grounded and based in law, "by approval
of the County Sheriff, of these County Commissioner approved policies promulgated pursuant to
or under the authority of Texas Local Government Code §§ 157.021(b) and 157.902, as these
statutes have been construed by case law, including City of Galveston v. Posnainsky, 62 Tex. 118
(1884) and Renfro v. Shropshire, 566 S.W.2d 688 (Tex. App.--Eastland 1978, writ ref'd n.r.e.)." 
Section 157.021(b) relates to compensation for overtime and compensatory time for certain county
employees. Tex. Loc. Gov't Code Ann. § 157.021(b) (West 1999). Section 157.902, entitled
"Personnel Rules Applying to Juvenile and Probation Officers, Court Reporters, and County
Auditor's Office in Counties of 500,000 or More," addresses rules relating to "hours of work;
vacations; holidays; sick leave; deductions for absences; retirement; medical care; hospitalization;
and compensation, accident, hospital, and disability insurance." Id. § 157.902(b)(2). Neither
statute is relevant to the personnel policies at issue here. Nor do the cases cited relate to the
referenced statutes. We fail to see how either section of the Texas Local Government Code
provides a basis in law for the county's personnel policy at issue. 

 We conclude that Carlisle's petition fails to allege that the county's personnel policy
was adopted under an ordinance or a statute. Carlisle's own recitation of the county policy also
fails to allege the existence of a civil or criminal sanction for the violation of the policy. See
Colunga, 753 S.W.2d at 719. To hold that such an internal policy was a "law" for purposes of
the Whistleblower Act would render meaningless the text defining the phrase. We reject Carlisle's
argument that the county's personnel policy constitutes a "law" as contemplated by the
Whistleblower Act. 

 By her own recitation of the facts, Carlisle reported a violation of internal personnel
policies. She argues on appeal that because the rule of conduct is grounded in law, it satisfies the
pleading requirement that she report a violation of law. Here, the only report alleged is a violation
of a rule of conduct. The facts alleged do not suggest otherwise. To hold, as Carlisle would have
us do, that Gilmore's rude behavior is actionable under the Whistleblower Act would result in a
lawsuit or threatened lawsuit over every jot or tittle of every rule or policy of a governmental
entity. Because many governmental offices are honeycombed with rules of professionalism,
conduct, and decorum, which may be aspirational in nature, in the absence of proper pleading, we
may not presume that they are promulgated pursuant to statute. 

 In her most recent amended petition, Carlisle alleges that she reported a "violation
of law" because Gilmore's conduct constituted disorderly conduct under section 42.01 of the Texas
Penal Code. See Tex. Penal Code Ann. § 42.01(a)(1), (4). The amended petition does not state
any additional facts to support the allegation.

 The Texas Penal Code defines the offense of disorderly conduct as follows:


(a) A person commits an offense if he intentionally or knowingly:


 (1) uses abusive, indecent, profane, or vulgar language in a public place,
and the language by its very utterance tends to incite an immediate
breach of peace; 

 

 . . . 


 (4) abuses or threatens a person in a public place in an obviously offensive
manner; 



Id. Texas courts have uniformly held that section 42.01 applies to "fighting" words. Jimmerson
v. State, 561 S.W.2d 5, 7 (Tex. Crim. App. 1978) (holding that section 42.01(a)(4), by
implication, applies only to fighting words); Duran v. Furr's Supermarkets, Inc., 921 S.W.2d 778,
785 (Tex. App.--El Paso 1996, writ denied) (holding that section 42.01(a)(1) applies only to
fighting words); Ross v. State, 802 S.W.2d 308, 314-15 (Tex. App.--Dallas 1990, no pet.); Estes
v. State, 660 S.W.2d 873, 875 (Tex. App.--Fort Worth 1983, pet. ref'd) (holding that section
42.01(a)(1) and (2) apply only to fighting words). Fighting words are those words that "by their
very utterance tend to incite an immediate breach of the peace." Duran, 921 S.W.2d at 785 (citing
Chaplinsky v. New Hampshire, 315 U.S. 568 (1942)). The concept "breach of the peace" has been
defined as an act that disturbs or threatens to disturb "the tranquility enjoyed by the citizens" and
includes actual or threatened violence as an essential element. Woods v. State, 213 S.W.2d 685,
687 (Tex. Crim. App. 1948); Head v. State, 96 S.W.2d 981, 982 (Tex. Crim. App. 1936).

 Carlisle alleges only that "the Texas Penal Code § 42.01[(a)(1), (4)], was, by the
Plaintiff, in good faith believed to have been violated by Capt. Gilmore . . . ." Carlisle does not
allege that Gilmore's language, by its very utterance, tended to incite an immediate breach of
peace. While we accept a plaintiff's factual allegations as true in a jurisdictional challenge, we
need not accept as true the legal or factual conclusions that a plaintiff draws from the facts
pleaded. Firemen's Ins. Co. v. Board of Regents of the Univ. of Tex. Sys., 909 S.W.2d 540, 542
(Tex. App.--Austin 1995, writ denied). Because Carlisle's factual allegations do not satisfy the
barest elements of the offense, we conclude that Carlisle has not pleaded facts sufficient to invoke
the court's jurisdiction and thus to waive sovereign immunity. 

 Absent a violation of law as defined by the Whistleblower Act, a court is not the
appropriate forum in which to review the wisdom of a personnel decision of a governmental entity. 
As enacted, the Act imposes a balance in the law, protecting the public as a whole as well as the
whistleblower; government offices could not function if every employment decision--or utterance
of profanity--became a whistleblower lawsuit. We decline to conclude that the Legislature
intended for every vulgarity or profanity uttered in a jail setting to be actionable. While profane
swearing may offend the sensibilities of co-workers, under the facts as alleged, it can hardly be
the type of breach of public trust envisioned by the Legislature when it enacted the Whistleblower
Act. The Whistleblower Act was not intended to be a vehicle for employee grievances that do not
meet the minimal pleading requirements of the statute.

 Because Carlisle has failed to plead a cause of action under the Whistleblower Act
sufficient to invoke the Act's waiver of sovereign immunity, we reverse the district court's
judgment denying Burnet County's plea to the jurisdiction. Accordingly, we sustain Burnet
County's sole issue on appeal.


CONCLUSION


 We conclude that Carlisle did not allege facts sufficient to affirmatively demonstrate
the district court's jurisdiction under the Whistleblower Act. Having sustained Burnet County's
issue on appeal, we reverse the district court's judgment denying Burnet County's plea to the
jurisdiction and render judgment dismissing this case for want of jurisdiction. 



 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Reversed and Rendered

Filed: January 11, 2001

Do Not Publish

1. We have jurisdiction over Burnet County's appeal pursuant to section 51.014(a)(8) of the
Texas Civil Practice and Remedies Code, which allows a governmental unit to appeal an order
denying its plea to the jurisdiction. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West
Supp. 2001).
2. Unless otherwise specified, our recitation of the facts is taken from Carlisle's sixth amended
petition. For purposes of a plea to the jurisdiction, we take the factual allegations in the plaintiff's
petition as true. Bland Indep. Sch. Dist. v. Blue, 44 Tex. Sup. Ct. J. 125, 2000 Tex. LEXIS 106,
at *19 (Dec. 7, 2000); Brannon v. Pacific Employers Ins. Co., 224 S.W.2d 466, 469 (Tex. 1949). 
Therefore, for purposes of this appeal, the material facts are undisputed.
3. Neither the warnings nor the letter to Judge McLean are appended to the petition or appear
in the record. 
4. Carlisle's original petition was filed on November 29, 1999. In its original answer and first
amended answer, Burnet County filed special exceptions, asserting that Carlisle's petition failed
to state a cause of action under the Whistleblower Act. On May 8, 2000, Burnet County filed a
plea to the jurisdiction and a motion for summary judgment. On May 17, 2000, Carlisle filed her
sixth amended petition. On June 8, 2000, the district court issued orders, denying Burnet
County's motion for summary judgment and its plea to the jurisdiction. 
5. To successfully challenge the trial court's jurisdiction to hear the subject matter of the
plaintiff's claim at the pretrial stage, the defendant must establish either: (1) that the plaintiff's
pleadings, taken as true, affirmatively establish that the trial court lacks subject matter jurisdiction
over the suit; or (2) that the plaintiff pled fraudulently or in bad faith with the purpose of
conferring jurisdiction, where under the true facts of the case the trial court would not have
jurisdiction. Curbo v. State, 998 S.W.2d 337, 342 (Tex. App.--Austin 1999, no pet.). Because
we conclude that appellant's petition on its face fails to state a claim sufficient to invoke the trial
court's jurisdiction under the Whistleblower Act, we do not address Burnet County's argument
that the allegations were also pled in bad faith for the purpose of acquiring jurisdiction. See
Denton County v. Howard, 22 S.W.3d 113, 118-19 (Tex. App.--Fort Worth 2000, no pet.). 
6. When considering a plea to the jurisdiction, a court may review evidence beyond the face of
the pleadings "when necessary to resolve the jurisdictional issues raised." Bland Indep. Sch. Dist.,
2000 Tex. LEXIS at *22. A plea to the jurisdiction "does not authorize an inquiry so far into the
substance of the claims presented that plaintiffs are required to put on their case simply to establish
jurisdiction." Id. at *18. The absence of subject matter jurisdiction may also be raised in a motion
for summary judgment, which permits consideration of the merits of a case. Id. at *17-18. As
whistleblower suits tend to present questions that require a review of the evidence, a challenge is
more properly raised in a motion for summary judgment. See, e.g., Donlevy v. City of Colony, 8
S.W.3d 754, 758 (Tex. App.--Fort Worth 1999, no pet.) (affirming grant of summary judgment after
concluding plaintiff did not believe in good faith that she had reported a violation of law); Ruiz v.
City of San Antonio, 966 S.W.2d 128, 132 (Tex. App.--Austin 1998, no pet.) (finding genuine issue
of material fact which precluded summary judgment); Castaneda v. Texas Dep't of Agric., 831
S.W.2d 501, 505 (Tex. App.--Corpus Christi 1992, writ denied) (reversing grant of summary
judgment because the governmental entity failed to prove no causal link existed between the
discharge and the report). 
7. Carlisle does not allege more specifically the precise report she made to Sheriff Pollack or
Judge McLean. 
8. In the context of the Whistleblower Act, "good faith" means that (1) the employee believed
the conduct reported was a violation of law and (2) the employee's belief was reasonable in light
of the employee's training and experience. Wichita County v. Hart, 917 S.W.2d 779, 784 (Tex.
1996). For purposes of pleading this element, it is sufficient if the plaintiff alleges that she
believed the reported conduct was a violation of law. City of Brenham v. Honerkamp, 950 S.W.2d
760, 763-64 (Tex. App.--Austin 1997, pet. denied). The satisfaction of this pleading requirement,
however, does not relieve her from the requirement that she also plead that she "reported a
violation of law." Tex. Gov't Code Ann. § 554.002 (West 1994 & Supp. 2001). 
9. A person seeking to impose liability under the Whistleblower Act need not prove that a
violation of law actually occurred. He must show instead that he reported conduct he believed
violated the law. See Hart, 917 S.W.2d at 784-85; Honerkamp, 950 S.W.2d at 763. Here,
Carlisle alleges only that she reported unprofessional conduct.
10. Nothing in the petition or record indicates that the county promulgated its personnel policies
pursuant to a statute or an ordinance.


6,
at *19 (Dec. 7, 2000); Brannon v. Pacific Employers Ins. Co., 224 S.W.2d 466, 469 (Tex. 1949). 
Therefore, for purposes of this appeal, the material facts are undisputed.
3. Neither the warnings nor the letter to Judge McLean are appended to the petition or appear
in the record. 
4. Carlisle's original petition was filed on November 29, 1999. In its original answer and first
amended answer, Burnet County filed special exceptions, asserting that Carlisle's petition failed
to state a cause of action under the Whistleblower Act. On May 8, 2000, Burnet County filed a
plea to the jurisdiction and a motion for summary judgment. On May 17, 2000, Carlisle filed her
sixth amended petition. On June 8, 2000, the district court issued orders, denying Burnet
County's motion for summary judgment and its plea to the jurisdiction. 
5. To successfully challenge the trial court's jurisdiction to hear the subject matter of the
plaintiff's claim at the pretrial stage, the defendant must establish either: (1) that the plaintiff's
pleadings, taken as true, affirmatively establish that the trial court lacks subject matter jurisdiction
over the suit; or (2) that the plaintiff pled fraudulently or in bad faith with the purpose of
conferring jurisdiction, where under the true facts of the case the trial court would not have
jurisdiction. Curbo v. State, 998 S.W.2d 337, 342 (Tex. App.--Austin 1999, no pet.). Because
we conclude that appellant's petition on its face fails to state a claim sufficient to invoke the trial
court's jurisdiction under the Whistleblower Act, we do not address Burnet County's argument
that the allegations were also pled in bad faith for the purpose of acquiring jurisdiction. See
Denton County v. Howard, 22 S.W.3d 113, 118-19 (Tex. App.--Fort Worth 2000, no pet.). 
6. When considering a plea to the jurisdiction, a court may review evidence beyond the face of
the pleadings "when necessary to resolve the jurisdictional issues raised." Bland Indep. Sch. Dist.,
2000 Tex. LEXIS at *22. A plea to the jurisdiction "does not authorize an inquiry so far into the
substance of the claims presented that plaintiffs are required to put on their case simply to establish
jurisdiction." Id. at *18. The absence of subject matter jurisdiction may also be raised in a motion
for summary judgment, which permits consideration of the merits of a case. Id. at *17-18. As
whistleblower suits tend to present questions that require a review of the evidence, a challenge is
more properly raised in a motion for summary judgment. See, e.g., Donlevy v. City of Colony, 8
S.W.3d 754, 758 (Tex. App.--Fort Worth 1999, no pet.) (affirming grant of summary judgment after
concluding plaintiff did not believe in good faith that she had reported a violation of law); Ruiz v.
City of San Antonio, 966 S.W.2d 128, 132 (Tex. App.--Austin 1998, no pet.) (finding genuine issue
of material fact which precluded summary judgment); Castaneda v. Texas Dep't of Agric., 831
S.W.2d 501, 505 (Tex. App.--Corpus Christi 1992, writ denied) (reversing grant of summary
judgment because the governmental entity failed to prove no causal link existed between the
discharge and the report). 
7. Carlisle does not allege more specifically the precise report she made to Sheriff Pollack or
Judge McLean. 
8. In the context of the Whistleblower Act, "good faith" means that (1) the employee believed
the conduct reported was a violation of law and (2) the employee's belief was reasonable in light
of the employee's training and experience. Wichita County v. Hart, 917 S.W.2d 779, 784 (Tex.
1996). For purposes of pleading this element, it is sufficient if the plaintiff alleges that she
believed the reported conduct was a violation of law. City of Brenham v. Honerkamp, 950 S.W.2d
760, 763-64 (Tex. App.--Austin 1997, pet. denied). The satisfaction of this pleading requirement,
however, does not relieve her from the requirement that she also plead that she "reported a
violation of law." Tex. Gov't Code Ann. § 554.002 (West 1994 & Supp. 2001). 
9. A person seeking to impose liability under the Whistleblower Act need not prove that a
violation of law actually occurred. He must show instead that he reported conduct he believed
violated the law. See Hart, 917 S.W.2d at 784-85; Honerkamp, 950 S.W.2d at 763. Here,
Carlisle alleges only that she reported unprofessional conduct.
10. Nothing in the petition or record indicates that the county promulgated its personnel policies
pursuant to